

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2002

# Blair v. Scott Spec Gases

Precedential or Non-Precedential:

Docket 1-1096

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Blair v. Scott Spec Gases" (2002). *2002 Decisions.* Paper 168.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed March 13, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1096

DIANE BLAIR,
        Appellant

v.

SCOTT SPECIALTY GASES;
THOMAS BARFORD; JERRY STUMP

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 00-cv-03865)
District Judge: Hon. Clarence C. Newcomer

Argued November 1, 2001

Before: SLOVITER, NYGAARD and CUDAHY,*
Circuit Judges

(Filed: March 13, 2002)

_____

* Hon. Richard D. Cudahy, United States Senior Circuit Judge for the
United States Court of Appeals for the Seventh Circuit, sitting by
designation.

Martha Sperling
Silver & Sperling
Doylestown, PA 18901

Ralph E. Lamar, IV (Argued)
Doylestown, PA 18901

 Attorneys for Appellant

Thomas J. Barton (Argued)
James G. Fannon
Drinker, Biddle & Reath
Philadelphia, PA 19103

 Attorneys for Appellees

Elisabeth S. Shuster
Pennsylvania Human Relations
 Commission
Harrisburg, PA 17101

 Attorney for Amicus-Appellant
Pennsylvania Human Relations
Commission

Robert J. Gregory (Argued)
 Senior Attorney
Gwendolyn Young Reams
 Associate General Counsel
Philip B. Sklover
 Associate General Counsel
Lorraine C. Davis
 Assistant General Counsel
Equal Employment Opportunity
 Commission
Washington, D.C. 20507

 Attorneys for Amicus-Appellant
Equal Employment Opportunity
Commission

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Diane Blair brought suit in the United States District Court for the Eastern District of Pennsylvania against Scott Specialty Gases ("Scott"), her former employer, alleging sexual harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000e et seq. (2001), the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. S 951 et seq. (2001), the Equal Rights provision of the Pennsylvania Constitution, Pa. Const. art. I, S 28, and other state claims. The District Court order on appeal dismissed Blair's complaint without prejudice pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. S 4 (2001), and directed the parties to arbitrate the claims pursuant to the terms of their arbitration agreement. Blair argues on appeal that the arbitration agreement is invalid and unenforceable, and that the agreement violates public policy by requiring the employee to pay one-half of the arbitrator's fees.

I.

FACTS AND PROCEDURAL BACKGROUND

Blair was employed by Scott, a producer and supplier of specialty gas products, from January 1995 through March 1999. In April 1997, she became the Plant Manager at the Plumstead Medical Products Division. Blair alleges that during the course of her employment she was subjected to discrimination and harassment based on her gender.

Blair alleges that during her initial interview with one of the Vice-Presidents of Scott, Tom Barford, he told her he would "rather employ a male plant manager, with a couple of kids who lived nearby and wouldn't leave him high and dry in a few months to marry a lawyer or doctor." App. at 66. Blair further alleges that Barford told her that he could not attend the sensitivity training on sexual discrimination and harassment "because he was a `sexist pig' and that if

3

people knew all the things he had done, he would be fired." App. at 67–68. In fact, Blair alleges that after she was hired, Barford demeaned her suggestions during meetings, as well as those of other female staff members, and routinely made sexist references to her, such as "putting tits on a bull" and "putting people in bed together." App. at 67. He allegedly commented on her appearance and choice of clothing, and suggested, for example, that she wear skirts more often to show her legs.

Blair resigned from her position on March 24, 1999, claiming that she could no longer tolerate the harassing work environment. Blair alleges that sometime after she resigned and reported the sexual harassment to Scott management, Barford and another Scott supervisor began to take retaliatory action by spreading rumors around the plant that Blair had engaged in an affair with a female co-worker.

On September 20, 1999, Blair filed an administrative "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC) that was cross-filed with the Pennsylvania Human Relations Commission (PHRC). Both the EEOC and PHRC eventually dismissed her complaint.

On July 31, 2000, Blair filed a complaint in the United States District Court for the Eastern District of Pennsylvania alleging sexual harassment, sex discrimination, and constructive discharge under Title VII, the PHRA, the Pennsylvania Constitution, and state common law claims of intentional infliction of emotional distress, defamation, negligent employment, breach of contract, and breach of the covenant of good faith and fair dealing. Scott filed a motion to dismiss, or in the alternative for summary judgment, on the ground that Blair had agreed to submit all claims relating to her employment to binding arbitration. A mandatory arbitration provision had been placed by Scott in an updated employee handbook that was distributed to all employees in February 1998. Blair, who was given the assignment of making sure that all of the Medical Products' employees signed an "Acknowledgment of Receipt and Reading" of the revised handbook, signed such an acknowledgment on February

4

27, 1998. That acknowledgment stated that she had read the arbitration provision and agreed to submit any disputes arising out of her employment to a final and binding arbitration.

In response to Scott's motion to dismiss based on the arbitration agreement, Blair argued that the arbitration agreement was not a validly formed contract and thus was not binding and, in the alternative, that the agreement should not be enforced on public policy grounds because it required her to pay one-half of the arbitrator's fees.

The District Court granted summary judgment to Scott, and initially dismissed Blair's complaint with prejudice. On Blair's motion for reconsideration, the District Court modified the order to dismiss the case without prejudice pursuant to 9 U.S.C. S 4, and ordered the parties to arbitrate their claims as directed by the arbitration agreement. Blair filed a timely notice of appeal. On November 30, 2000, she also filed for arbitration before the American Arbitration Association (AAA) as directed by the arbitration agreement but requested that the AAA hold her case in abeyance pending the outcome of these proceedings.

II.

JURISDICTION

Scott argues, as a threshold matter, that this court does not have jurisdiction on the ground that the District Court's modified order was not final or appealable because it dismissed Blair's claims without prejudice and ordered the parties to arbitrate. Scott argues that the court's order effectively acted as a stay of the proceedings pending the outcome of the arbitration. Under the FAA, a stay is considered an interlocutory order that may not be appealed. 9 U.S.C. S 16(b)(1).

Scott relies on Smith v. The Equitable, 209 F.3d 268 (3d Cir. 2000), where we held, on facts similar to the present case, that the dismissal of an employment discrimination case without prejudice with an order to compel arbitration

5

was not a final appealable order. Smith, an African American, brought suit in federal court alleging that the defendant company's decision not to hire him was based on his race in violation of Title VII and the PHRA. Because he had signed a pre-employment contract that included an agreement to arbitrate any employment-related disputes, the district court dismissed Smith's action without prejudice and compelled arbitration. Id. at 270.

On appeal, we noted that under section 16(b) of the FAA, federal courts are expressly barred from taking an appeal of a district court's interlocutory order compelling arbitration. Id. at 271. Section 16 provides:

> (a) An appeal may be taken from--
>
> (1) an order--
>
> (A) refusing a stay of any action under section 3 of this title,
>
> (B) denying a petition under section 4 of this title to order arbitration to proceed,
>
> (C) denying an application under section 206 of this title to compel arbitration,
>
> (D) confirming or denying confirmation of an award or partial award, or
>
> (E) modifying, correcting, or vacating an award;
>
> (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
>
> (3) a final decision with respect to an arbitration that is subject to this title.
>
> (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
>
> (1) granting a stay of any action under section 3 of this title;
>
> (2) directing arbitration to proceed under section 4 of this title;

6

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. S 16.

We dismissed Smith's appeal on the ground that it was an interlocutory order directing arbitration to proceed under section 4, and therefore not appealable under 9 U.S.C. S 16(b). We stated that a district court's order in an independent proceeding, one brought by the plaintiff in order to compel arbitration, is considered final and immediately appealable because it addresses the exact relief sought. Smith, 209 F.3d at 271. We contrasted such an order from an order in an "embedded" proceeding, one where the defendant, rather than the plaintiff, moves to compel enforcement of the arbitration agreement as a defense to claims brought before the court. We noted that the latter traditionally had been considered interlocutory and not immediately appealable. Id.

In Smith, we recognized the apparent anomaly of treating these types of proceedings differently but pointed to the rationale we had previously applied " `that an order directing arbitration is interlocutory and, therefore, not appealable if it is made in a lawsuit, such as a suit for damages, in which in the normal course of judicial procedure there will be a later final order or judgment from which an appeal can be taken by a person aggrieved by the prior order to arbitrate.' " Id. at 271 (quoting Zosky v. Boyer, 856 F.2d 554, 558 (3d Cir. 1988) (quoting Rogers v. Schering Corp., 262 F.2d 180, 182 (3d Cir. 1959))). We stated that the district court's decision to dismiss the proceedings rather than stay the proceedings under 9 U.S.C. S 3, was appropriate "for reasons of judicial efficiency" when " `all the claims involved in an action are arbitrable.' " Smith, 209 F.3d at 272 (quoting Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998)). We also noted that the dismissal "was the functional equivalent of a stay" since the plaintiff could test the validity of the arbitration agreement before the arbitrator and then, if necessary, challenge the arbitration award in the district court. Id.

7

The continued viability of the holding and rationale in Smith and earlier cases must be examined in light of the Supreme Court's recent decision in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79 (2000), which Blair contends is inconsistent with Smith and establishes our jurisdiction over this appeal. In Green Tree, the plaintiff sued the companies that had financed her purchase of her mobile home alleging that they violated the Truth in Lending Act, 15 U.S.C. S 1601 et seq. and the Equal Credit Opportunity Act, 15 U.S.C. SS 1691-1691f. Green Tree, 531 U.S. at 82-83. The district court granted the defendants' motion to compel arbitration and dismissed the plaintiff's claims with prejudice. The court of appeals rejected the defendants' challenge to its jurisdiction on the ground that the order was not appealable. Randolph v. Green Tree Fin. Corp.-Alabama, 178 F.3d 1149, 1156-57 (11th Cir. 1999).

The Supreme Court pointed to the well-established definition of a "final decision" as a decision that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Green Tree, 531 U.S. at 86 (quotations omitted). The Court then held that the district court's order directing the parties to arbitrate and dismissing the plaintiff's claims with prejudice "plainly disposed of the entire case on the merits and left no part of it pending before the court." Id. The ability of a party to an arbitration to bring a later proceeding in a district court to enter judgment on an arbitration award or vacate or modify that award "does not vitiate the finality of the District Court's resolution of the claims in the instant proceeding." Id. On this basis, the Court held that the district court's order was final and appealable.

Of particular significance to the issue before us, the Supreme Court rejected the distinction between "embedded" and "independent" proceedings that we and many other courts of appeals had adopted. The Court noted that the embedded/independent distinction was not firmly established at the time of the enactment of FAAS 16(a)(3) with respect to cases "where the District Court both ordered arbitration and dismissed the remaining claims." Id. at 88. By contrast, the Court continued, the definition of "final decision" was firmly established at the time. Id. at 88. On

8

this basis, the Court concluded that "where . . . the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is`final' within the meaning of S 16(a)(3), and therefore appealable." Id. at 89.

The question presented in this case is whether the jurisdictional holding in Green Tree, where the action had been dismissed with prejudice, applies equally to a case such as this one that was dismissed without prejudice. Scott argues that a dismissal without prejudice is the "functional equivalent of a stay," as the Smith court noted, and as such does not dispose of the claims on the merits. Scott directs our attention to a footnote in Green Tree which stated that "[h]ad the District Court entered a stay instead of a dismissal in this case, that order would not be appealable." Green Tree, 531 U.S. at 87 (citing 9 U.S.C. S 16(b)(1)).

The Supreme Court did not comment on whether a dismissal without prejudice should be treated as a stay or as a final order, nor did it address whether the district court should have entered a stay instead of a dismissal. The Court's opinion speaks generally of "dismissals" and does not indicate whether it hinges on the fact that the dismissal was with prejudice. Nor does the statute provide guidance, as it does not differentiate between appeals of district court orders dismissing cases with or without prejudice.

Blair argues that there is no valid distinction between a dismissal with prejudice and one without prejudice with regard to these proceedings. In both instances, there is nothing left for her to do but submit to arbitration, and nothing left for the District Court to do other than execute, modify, or vacate the ultimate arbitration award. No justiciable claims remain for the District Court to address outside of the arbitrable claims. Blair also argues that the case relied upon in Smith to find that a dismissal without prejudice is functionally equivalent to a stay, Communication Workers v. AT&T Co., 932 F.2d 199 (3d Cir. 1991), is inapplicable. In Communication Workers , the district court dismissed one set of claims with leave to amend due to pleading irregularities and dismissed another

9

set of claims because they were arbitrable. Id. at 204. We stated in that case that the district court's order dismissing the action because it was arbitrable was "functionally analogous to the grant of a stay in an ongoing proceeding pending the outcome of arbitration. . . . [t]hus, our result advances the laudable policy favoring arbitration over litigation." Id. at 207 (citing Zosky , 856 F.2d at 561–62). Because there were additional claims in that case not subject to arbitration that the district court gave leave to amend, that decision is distinguishable from the instant case where the District Court dismissed all of Blair's claims in favor of arbitration.

After the decision in Green Tree, at least three courts of appeals have had the opportunity to address whether a dismissal without prejudice is a final, appealable order, or should be treated as a non-appealable stay. In Interactive Flight Technologies, Inc. v. Swissair Swiss Air Transport Co., 249 F.3d 1177 (9th Cir. 2001), the district court had dismissed the complaint without prejudice and directed the parties to arbitrate in accordance with their agreement, and the court of appeals had previously dismissed the appeal for lack of jurisdiction. The Supreme Court remanded and directed the Ninth Circuit to reconsider the issue in light of Green Tree. On remand, the Ninth Circuit held that the district court's decision to dismiss the action without prejudice and order the parties to arbitrate was a final, appealable decision in accordance with Green Tree. The court noted that Green Tree overruled the Ninth Circuit's earlier decisions that had based their holdings on the distinction between embedded and independent proceedings and it instead used the traditional definition of a final order. Id. at 1179. The court then proceeded to address precisely the issue presented here and rejected the distinction between dismissals with or without prejudice.

> [A]ppellees . . . suggest that the district court's dismissal in this case was not final simply because it was made without prejudice. We reject this argument because the district court's order and judgment sufficiently show that the court intended to close this case without precluding the parties from bringing a new action after completing arbitration. It is only in

10

> this sense that the dismissal was "without prejudice,"
> and that is not enough to show that the dismissal was
> interlocutory rather than an appealable final decision.

Id. (citing Green Tree, 121 S.Ct at 520).

In a recent decision, the Court of Appeals for the Second Circuit reached the same conclusion, holding that a "dismissal without prejudice in favor of arbitration is an appealable `final decision' under 9 U.S.C. S 16(a)(3) and that Green Tree has overruled our precedents that distinguish between `independent' and `embedded' actions for purposes of appealability." Salim Oleochemicals v. M/V Shropshire, No. 01-7624, 2002 U.S. App. LEXIS 878, at *3 (2d Cir. Jan. 18, 2002). The court noted that Green Tree involved a dismissal with prejudice, unlike the dismissal without prejudice before it, but stated that "dismissals with and without prejudice are equally appealable as final orders. . . . There is thus no reason to think that a dismissal without prejudice is any less a `final decision' under Green Tree than is a dismissal with prejudice." Id. at *8

The Eleventh Circuit held similarly. In Employers Insurance of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316 (11th Cir. 2001), the district court had dismissed each of the underlying actions in a construction contract case and granted the defendant's motion to compel arbitration. The Eleventh Circuit characterized Green Tree as holding that a "district court order compelling arbitration and dismissing all other claims is `final' within the meaning of S 16(a)(3), and therefore appealable, even when that order occurs in an `embedded' proceeding involving both a request for arbitration and other claims for relief." Id. at 1321-22 (citing Green Tree, 121 S.Ct. at 520-21). The court noted that the dismissal and direction to arbitrate left the district court with nothing to do but execute the judgment. The court observed that although the "district court did not specify whether the dismissal was with or without prejudice," the "arbitration order clearly disposed of the entire case on the merits and left no part of it pending before the court. Moreover, the district court could have, but did not, stay the case pending arbitration." Id. at 1322 n.6. (citing Green Tree, 121 S.Ct. at 520 n.2).

11

We agree with the reasoning in these cases. The Green Tree decision draws a distinction between dismissals and stays, but does not draw any distinctions within the universe of dismissals. The focus in Green Tree is on the traditional definition of a "final order." Here, the District Court did not retain jurisdiction over any of Blair's claims as every claim was held to be arbitrable. Because there is "nothing more for the court to do but execute the judgment," the District Court's order falls within the Supreme Court's definition of an appealable final order. Although there remains the possible anomaly of different jurisdictional results depending on whether a district court dismisses or stays a case, the line between the two types of dispositions follows from the Supreme Court's language.1

We conclude that even though the District Court's order dismissed this case without prejudice and directed the parties to proceed with arbitration, the order was final and appealable.2 We turn to Blair's challenge to the validity of the arbitration agreement.

III.

ARBITRATION AGREEMENT

A. Standard of Review

We review a grant of summary judgment de novo and must apply the same test as the district court. Omnipoint Communications Enters. v. Newtown Township., 219 F.3d 240, 242 (3d Cir. 2000). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

_____

1. We have no reason to assume that a district court will enter a stay rather than a dismissal when all of the claims are arbitrable. Therefore, the issue may not arise.

2. In light of our conclusion, we need not address Blair's alternative argument that this order is an appealable order under the collateral order doctrine.

12

judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-movant's allegations are to be taken as true, and when they "conflict with those of the movant, the former must receive the benefit of the doubt." Valhal Corp. v. Sullivan Assocs., 44 F.3d 195, 200 (3d Cir. 1995) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

The Supreme Court has held that in response to a motion for summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)).

B. Validity of Arbitration Agreement

Blair first argues that the arbitration agreement is not supported by adequate consideration and thus is not a binding, enforceable contract. A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA. See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Before concluding that there is a valid contract under Pennsylvania law, the court must "look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." ATACS Corp. v. Trans World Communications, Inc., 155 F.3d 659, 666 (3d Cir. 1998); see also Aircraft Guar. Corp. v. Strato-Lift, Inc., 103 F. Supp. 2d 830, 836 (E.D. Pa. 2000) ("[C]ontracts are enforceable when parties reach a mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient definiteness to be specifically enforced.")."Consideration `confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.' " Channel Home Centers v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986) (quoting Curry v. Estate of Thompson, 481 A.2d 658, 661 (Pa. Super. Ct. 1984)).

13

Without consideration, a contract is unenforceable. Id. at 298-99.

Blair contends that the agreement was unenforceable for lack of mutuality of consideration because Scott did not agree to be bound by the arbitration agreement. However, the arbitration agreement specifically states that"if any dispute arises from your employment with Scott, you and Scott agree that final resolution of the dispute will occur exclusively in a final and binding arbitration proceeding." App. at 49. The language of the agreement is clear that both parties agreed to be bound to the arbitration agreement and Blair admitted to having read that language when she signed the acknowledgment shortly after receipt of the revised handbook containing the arbitration clause. When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced. See, e.g., Michalski v. Circuit City Stores, Inc., 177 F.3d 634, 637 (7th Cir. 1999); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 378 (4th Cir. 1998). Moreover, a contract need not have mutuality of obligation as long as the contract is supported by consideration. Harris v. Green Tree Fin. Corp. , 183 F.3d 173, 180 (3d Cir. 1999) (finding contract enforceable where one party had option to litigate arbitral issues in court, while the other party was required to invoke arbitration, because mutuality is not required where the requirement of consideration is met).

Blair contends that Scott's unilateral ability to alter the agreement renders the agreement illusory. Blair's acknowledgment of the agreement reads in relevant part,

> I understand that nothing in this Handbook can be modified or deleted, nor can anything be added in any way by oral statements or practice. Only the Executive Committee of Scott Specialty Gases can change this Handbook, and the change must be in writing. If Scott Specialty Gases makes any material changes, it will give me a copy of them, and by remaining employed by Scott Specialty Gases thereafter I will be deemed to have accepted these changes.

App. at 23.

14

In support of her argument, Blair points to the decision of the Court of Appeals for the Sixth Circuit in Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306 (6th Cir. 2000). In that case, the court concluded that the arbitration agreement was illusory and unenforceable because the agreement gave the provider of the arbitration services the unlimited right to modify the arbitration rules without giving notice to the employee or gaining the employee's consent. The court held that " `[w]here a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement.' " Id. at 316 (quoting 1 Samuel Williston, Contracts S 43, at 140 (3d ed. 1957)).

The District Court here distinguished Floss on the ground that Scott's Executive Committee retained the right to alter the material aspects of the agreement only after putting the change in writing, providing a copy to the employees, and allowing the employees to accept the change by continuing employment. Scott's right is much more confined than the unfettered discretion of the arbitration provider in Floss who could make changes to the agreement without notice to or consent of the employees. Although Blair argues that Scott has the right of "unilateral modification" to its handbook, Br. of Appellant at 13 n.1, in fact that is limited to non-material changes to the handbook. It is unlikely that the unfettered discretion to modify the agreement as to arbitration would be categorized as non-material and we need not hypothesize about that possibility. See, e.g., The American Heritage College Dictionary 837 (3d ed. 1993) (defining "material" as "[b]eing both relevant and consequential").3

_____

3. Because we conclude that Scott's promise to submit to arbitration serves as consideration, we need not consider Blair's argument that her continued employment was not adequate consideration for her agreement to arbitrate but we note that such an argument is questionable in light of decisions that have found that continued employment may serve as consideration. See, e.g. , Hightower v. GMRI, Inc., 272 F.3d 239, 243 (4th Cir. 2001); Venuto v. Ins. Co. of N. Am., No. 98-96, 1998 U.S. Dist. LEXIS 11050, at *14-15 (E.D. Pa. July 22, 1998) (holding that an at-will employee's continued employment provides adequate consideration for an arbitration provision).

15

We thus conclude that the arbitration agreement satisfies these basic contract principles and is not unenforceable on those grounds.

C. Arbitrator's Fees

The most far-reaching issue in this case, and the one that prompted filing of amicus briefs by the EEOC and the PHRC, is the effect of the provision in the agreement to arbitrate that requires Blair to pay one-half of the arbitrator's fees. Blair v. Scott Specialty Gases, No. 00-3865, 2000 U.S. Dist. LEXIS 16809 at *20-21 (E.D. Pa. Nov. 22, 2000). The arbitration agreement provides that "[i]n order to make the arbitration procedure readily available to its employees, Scott will pay one hundred percent (100%) of any administrative fee required by the AAA [American Arbitration Association] to initiate the arbitration process. Other expenses will be paid by the parties as set forth in the applicable AAA rules." App. at 49. The AAA rules provide that the "arbitrator's compensation shall be borne equally by the parties unless they agree otherwise, or unless the law provides otherwise." App. at 112. The parties have not agreed to another arrangement, and it is therefore uncontested that Blair is required to pay one-half of the arbitrator's compensation. The AAA rules also provide, though the parties do not address, that other expenses of the arbitration will be borne equally by the parties including the travel expenses of the arbitrator, AAA representatives, and witnesses produced at the direction of the arbitrator.

The District Court rejected Blair's argument that the agreement is unenforceable as a result of the fee-sharing provision. While this court must be mindful of the "liberal federal policy favoring arbitration agreements," Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), the Supreme Court has also made clear that arbitration is only appropriate "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum" allowing the statute to serve its purposes. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) (alteration in original) (quoting Mitsubishi Motors Corp. v. Soler Chrysler--Plymouth, Inc., 473 U.S.

16

614, 637 (1985)). Arbitration costs are directly related to a litigant's ability to pursue the claim. In Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79 (2000), the Supreme Court acknowledged that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." Id. at 90.

In Green Tree, the plaintiff alleged that the financial institutions that had financed her mobile home violated the Truth in Lending Act and the Equal Opportunity Credit Act. The district court compelled arbitration. Plaintiff appealed, arguing that the arbitration agreement's silence on the subject of fees created a risk that she would be required to bear a prohibitive proportion of the arbitration costs, which would force her to forego arbitration and relinquish her rights. Id. The Eleventh Circuit agreed and reversed. When the matter reached the Supreme Court, it held that the articulated risk to the plaintiff was too "speculative" to justify invalidating the arbitration agreement. Id. at 91.

Prior to the decision in Green Tree, the decisions of several courts of appeals had expressed concern about fee-splitting arrangements in employment arbitration agreements. For example, in Cole v. Burns International Security Services., 105 F.3d 1465 (D.C. Cir. 1997), the court wrote,

> [W]e are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case. Under Gilmer, arbitration is supposed to be a reasonable substitute for a judicial forum. Therefore, it would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court.

Id. at 1484.

The Cole court held that where arbitration has been imposed by the employer, the employer may not require the employee to pay all or part of the arbitrator's fees in order

17

to pursue statutory claims under Title VII. Id. at 1484-85. The parties in Cole had stipulated that arbitrator's fees vary between $500 to $1000 or more per day. Id. at 1480 & n.8 (citing several articles regarding the cost of arbitration). In Cole, as in Green Tree, the arbitration agreement was silent on the allocation of the arbitrator's fees between the parties, and the court concluded that the employer alone must pay. Id. at 1481. The opinion does not indicate whether the court had specific proof of the claimant's financial position but does note that the job from which Cole was fired was that of a security guard, id. at 1469, and that "[t]hese fees would be prohibitively expensive for an employee like Cole, especially after being fired from his job." Id. at 1484.

The Tenth Circuit reached a similar result in Shankle v. B-G Maintenance Management of Colorado, Inc., 163 F.3d 1230, 1234-35 (10th Cir. 1999). In Shankle, as in Cole, the arbitration agreement covered the employment relationship, but here the arbitration agreement was specific about the costs and required the employee to pay one-half of the arbitrator's fees. The court held that requiring payment from someone who cannot afford to pay "undermines the remedial and deterrent functions of the federal anti-discrimination laws." Id. at 1235. "[A]n arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." Id. at 1234. The court noted that arbitration generally provides such an alternative but that the presence of a fee-splitting provision calls the accessibility of that alternative into question. Id. at 1234 n.3. In Shankle, the parties had submitted their claims to arbitration and received a letter from the arbitration provider specifying the costs of arbitration. Id. at 1232. At that point, the employee decided arbitration would be too expensive, canceled the arbitration, and filed suit in federal court. Id. The court of appeals concluded that Shankle, a former janitor, could not afford such a fee and that "it [was] unlikely other similarly situated employees could either." Id. at 1234-35.

The District Court in the instant case refused to apply the decision in Shankle, finding Blair's case less compelling

18

than Shankle's because Blair had not submitted any evidence to demonstrate the amount of the arbitrator's fees, while Shankle had received a letter from the arbitrators indicating their rates (but not the time they expected to spend on the case). Blair, 2000 U.S. Dist. LEXIS 16809, at *20.

Scott cites Williams v. Cigna Financial Advisors Inc., 197 F.3d 752 (5th Cir. 1999), in support of its position that the fee-sharing provision does not invalidate the agreement. Williams is not entirely analogous to the case before us. In Williams, the claimant went to arbitration, an award was issued, and then the claimant challenged his obligation to pay forum fees. Although the court noted the requirement that arbitration provide an adequate substitute for a judicial forum, it held that Williams did not demonstrate that the arbitrator's order to pay one-half of the fees prevented him from having a "full opportunity to vindicate his claims effectively or prevented the arbitration proceedings from affording him an adequate substitute for a federal judicial forum," since he did in fact seek a resolution through arbitration. Id. at 764. The court noted that there was no evidence that the costs were "prohibitively expensive" as Williams had testified in his arbitration hearing that his income was in excess of six figures. Id. at 764-65.

Similarly, in Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999), the court rejected a claimant's argument that the possibility that the arbitrator may require her to bear expensive forum fees should invalidate the agreement. Id. at 15-16. The court reasoned that the levying of fees is often waived by the arbitrator and can always be reviewed in a judicial forum. Id. In that case, the applicable arbitration rules did not require the claimant to pay the arbitrator's fees, but only presented the possibility that fees would be assessed against her. Id. (noting also that "arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court"); see also Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 366 (7th Cir. 1999) (following reasoning in Rosenberg).

19

Although the Supreme Court's decision in Green Tree was decided in a context different from that of an employment dispute, it offers the closest guidance on the issue of arbitration fees. The Supreme Court in Green Tree placed the initial burden of proof on the party resisting arbitration to demonstrate that arbitration would be prohibitively expensive by showing "the likelihood of incurring such costs." Id. at 92. The Court found that the plaintiff had not met her burden of proving the costs of the arbitration or her inability to pay. However, the Court suggested an eventual burden shift when it stated that "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss[ ] for . . . neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point." Id.

Scott argues that no burden shift is required under Green Tree, but as the language quoted above demonstrates, a shift is contemplated. The Court simply never reached the level of proof required to shift the burden because the plaintiff in that case failed to present evidence to show she would "be saddled with prohibitive costs." Id. at 91. The arbitration agreement was silent on the allocation of fees and the parties had not designated a particular arbitration association or arbitrator to resolve the dispute. 531 U.S. at 90 n.6. The Green Tree Court concluded that the AAA informational material plaintiff provided (which did not discuss fees), an article citing average fees for arbitrators, and her citations to fees referenced in other court decisions, were insufficient proof of likely costs in the case before it. Id. at 91 n.6.

The Green Tree decision thus informs us that claimants have the burden to come forward with some evidence to show the projected fees that would apply to their specific arbitrations. We draw support for that inference from the Court's rejection of the position of the four dissenting justices that the burden should be on the defendant who has superior information about the cost of pursuing arbitration to show that the arbitral forum will not be financially inaccessible. 531 U.S. at 96 (Ginsburg, J., dissent).

20

In this case, the District Court, in a decision that predated Green Tree, held that Blair had not met her burden since she failed to offer proper evidence of her inability to pay or of the amount of the arbitrator's fees. The court also noted that Blair did not produce any evidence that she attempted to reach an agreement with Scott providing that Scott would pay her share of the fees. Blair, 2000 U.S. Dist. LEXIS 16809, at *21.

Blair argues that the affidavit she submitted setting forth her financial status comprised sufficiently competent evidence that she could not afford to pay the arbitrator's fees. Her affidavit states that she "can't afford to pay the costs of taking [her] case to arbitration" and sets forth the amounts of her assets (her car and house), monthly income, debt, and monthly bills. App. at 120. The affidavit indicates that her monthly bills exceed her monthly income by $182 per month and that her debt exceeds her assets by $57,000. App. at 120. However, Blair did not attach any documents to support these figures, such as copies of bank statements and bills.

In rejecting Blair's submission as inadequate, the District Court cited cases holding that conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Blair, 2000 U.S. Dist. LEXIS 16809, at *20-21 (citing Wells v. Shalala, 228 F.3d 1137, 1144 (10th Cir. 2000); Taylor v. Monsanto Co., 150 F.3d 806, 809 (7th Cir. 1998); Rose-Maston v. NME Hospitals, Inc. , 133 F.3d 1104, 1109 (8th Cir. 1998); Lindemann v. Empress Casino Hammond Corp., No. 97-C-8938, 1999 WL 59839, *4 (N.D. Ill. Jan. 27, 1999)). In order to satisfy the standard for summary judgment "the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is `essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden." Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985) (quotation omitted).

Also missing from Blair's submission is any information about the estimated cost of arbitration, such as the fees charged by AAA arbitrators in her area. Blair plausibly argues that the fact that her affidavit shows that her net income is negative indicates that she could not afford to

21

pay any costs of arbitration, no matter how much or how little they prove to be, but Green Tree tells us we need greater proof in order to find Blair's burden satisfied.

The EEOC, appearing as an amicus, suggests that in light of Green Tree we must remand to the District Court for further factual inquiry on the issue of arbitrator's fees. The EEOC emphasizes the importance of addressing this issue pre-arbitration since a decision to foreclose access to a judicial forum exposes claimants to potentially large arbitration costs that might deter them from pursuing arbitration at all. It reiterates the Supreme Court's statements in Gilmer that individuals may be required to arbitrate statutory claims of discrimination but that the arbitration agreement must not force a party to "forgo the substantive rights afforded by the statute." Gilmer, 500 U.S. at 26 (quoting Mitsubishi, 473 U.S. at 628). If Blair is ordered to arbitration without a full inquiry, she may be forced to relinquish her rights under the discrimination statute due to her inability to afford the cost of defending those rights.

Because the District Court did not have the advantage of the Green Tree opinion, its decision, which accurately anticipated much of the Supreme Court's later decision, nonetheless did not fully explore the cost issue. As the EEOC notes, Green Tree established the right of a claimant to invoke discovery procedures in the pre-arbitration proceeding in order to assist the claimant in meeting her burden of showing the likelihood of bearing prohibitive costs. Although discovery is ordinarily not undertaken at such an early stage of a proceeding that is governed by an arbitration agreement, there is language in the Supreme Court's opinion faulting the claimant for not presenting evidence "during discovery." Green Tree , 531 U.S. at 92. Additionally, the EEOC cites an interchange during oral arguments before the Supreme Court that indicates that the Supreme Court assumed that discovery was available. Br. of EEOC at 12.4 Without some discovery, albeit limited

_____

4. The EEOC quotes excerpts from the oral argument before the Supreme Court in Green Tree, in which the Court asked the claimant why she did not " `make any showing' in the district court on the issue of arbitration

22

to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay, it is not clear how a claimant could present information on the costs of arbitration as required by Green Tree and how the defendant could meet its burden to rebut the claimant's allegation that she cannot afford to share the cost. See, e.g., Livingston v. Associates Fin., Inc., 2001 WL 709465, at *2 (N.D. Ill. June 25, 2001) (holding that the only way a claimant can uncover the reasonably specific facts required by Green Tree is through limited discovery since "it seems axiomatic that, if the Supreme Court places a burden of proof on a party, then that party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove").

Several cases since Green Tree have tried to articulate what a claimant needs to show in order to meet her burden on this issue. In Bradford v. Rockwell Semiconductor Systems Inc., 238 F.3d 549 (4th Cir. 2001), the court held that the determination of whether fee-splitting renders an agreement unenforceable must be examined on a case-by-case basis rather than through the application of a broad per se rule against all fee-splitting. Id. at 556. The court stated,

> [T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.

Id.
_____

costs . . . criticized the claimant for not seeking `discovery going to the costs of arbitration' . . . opined that `proof could be offered in the district
court, before the arbitration' on the fees issue . .. [and] asked whether the claimant could have sought `discovery' concerning `the costs of arbitration.' " Br. of EEOC at 12 (quoting Transcript of Oral Argument in Green Tree, 2000 WL 1513141, at *35-39, 54).

23

The court cautioned that these objections should be raised in court prior to arbitration. Id. at 558 n.7. Its encouragement of a pre-arbitration, case-by-case evaluation of the claimant's expected costs and ability to pay necessarily implies that some factual inquiry will be authorized. Id. at 556 n.5. The court found that Bradford had not demonstrated that he was unable to pay or that he was deterred from arbitration since Bradford, unlike Blair, had initiated arbitration before litigation and proceeded through a full arbitration hearing on the merits of his claim, demonstrating conclusively that he was not deterred from entering into arbitration. Id. at 558. Evidence in his case also showed that he earned a salary of $115,000 in addition to yearly bonuses prior to his discharge. Id. at 558 n.6.

A number of district courts have looked at these issues, including courts in this circuit. See, e.g., Giordano v. Pep Boys--Manny, Moe & Jack, Inc., No. Civ. A. 99-1281, 2001 WL 484360, at *6 (E.D. Pa. Mar. 29, 2001) (finding Green Tree does not "mandate a searching inquiry into an employee's bills and expenses," that the focus should be on the costs of arbitration, and when the agreement required the claimant who earned only $400 a week to pay half the costs of arbitration, the agreement was unenforceable and the employer must bear all of the costs); Goodman v. ESPE America, Inc., No. 00-CV-862, 2001 U.S. Dist. LEXIS 433, at *13-14 (E.D. Pa. Jan. 19, 2001) (rejecting a per se rule that fee-splitting is unenforceable and finding that claimant who earned a base salary of $80,000 was able to afford the costs of arbitration).

The EEOC suggests that the existence of the fee-allocation provision requiring Blair to pay one-half of the arbitrator's fees satisfies her threshold burden of presenting evidence of the "likelihood" of incurring "prohibitive" costs, and that the burden has now shifted to Scott to show contrary evidence. In the alternative, it argues that the existence of this provision is sufficient to trigger Blair's right to discovery on this issue. The EEOC argues that remand is appropriate in this case, where it was not in Green Tree, because in Green Tree the arbitration agreement was silent on the subject of fees, rendering the

24

risk that the claimant "will be saddled with prohibitive costs" too speculative, whereas here the claimant is clearly required to pay one-half of the arbitrator's fees.

Blair would have us hold that the mere existence of a fee-splitting provision in an agreement would satisfy the claimant's burden to prove the likelihood of incurring prohibitive costs under Green Tree, 530 U.S. at 92. We decline to do so. It would be inconsistent with Green Tree and would run counter to the strong federal preference for arbitration and the liberal policy regarding arbitration. Accord Bradford, 238 F.3d at 557.

However, we agree with the EEOC that a remand is appropriate in light of Blair's affidavit of her limited financial capacity, the evidence that the AAA would preside over the arbitration, and the AAA rules requiring the parties to bear equally the costs of the arbitrator's fees. Limited discovery into the rates charged by the AAA and the approximate length of similar arbitration proceedings should adequately establish the costs of arbitration, and give Blair the opportunity to prove, as required under Green Tree, that resort to arbitration would deny her a forum to vindicate her statutory rights. Scott should also be given the opportunity to meet its burden to prove that arbitration will not be prohibitively expensive, or as has been suggested in other cases, offer to pay all of the arbitrator's fees.

D. Great Western

The District Court relied upon this court's decision in Great Western Mortgage Corp. v. Peacock, 110 F.3d 222 (3d Cir. 1997), to find Blair's claims regarding the statute of limitations and waiver of a jury trial right to be issues for the arbitrator and not the court. In Great Western, this court, finding no contrary state policy, rejected the plaintiff's argument that her arbitration agreement was void as a matter of public policy. It left to the arbitrator the decision of whether the plaintiff waived any rights under state laws. Id. at 231. Blair argues Great Western was in error and should be reversed. The Great Western decision has not been overruled and may only be reversed by this

25

court en banc. See 3d Cir. Internal Operating P. 9.1. It is this "court's tradition that a panel may not overrule or disregard a prior panel decision unless that decision has been overruled by the Supreme Court or by our own court sitting en banc." Patriot Party v. Allegheny County Dep't of Elections, Nos. 96-3677, 96-3359, 1998 U.S. App. LEXIS 12688, at *6 (3d Cir. June 15, 1998) (citing Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44, 46 (3d Cir. 1991)).

Blair contends in her reply brief that Great Western was implicitly overruled by Green Tree. She argues that the decision in Great Western deferring public policy questions to the arbitrator is in conflict with the decision in Green Tree allowing the court to invalidate an arbitration agreement based on prohibitive costs.

We disagree. Both decisions articulate similar scopes of inquiry for district courts evaluating arbitration agreements, first, whether there was an arbitration agreement, and second, whether that agreement was valid. Great Western, 110 F.3d at 228; Green Tree, 531 U.S. at 90 ("[W]e first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."). Both decisions recognize the strong presumption in favor of arbitration and that doubts " `concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " Great Western, 110 F.3d at 228 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25 (1983)); see also Green Tree, 531 U.S. at 91 (citing Moses H. Cone Mem'l Hosp., 531 U.S. at 24). Great Western held that the question of whether the arbitration agreement validly waived certain rights afforded by New Jersey law could be presented in the arbitral forum, but also evaluated that claim on the merits and found that the claimant had not demonstrated any New Jersey policy against arbitration. 110 F.3d at 231-32. Because Great Western did not foreclose the ability of courts to examine public policy arguments, it is not in conflict with the holding of Green Tree, and has not been overruled.5

_____

5. The PHRC filed an amicus brief arguing that requiring a victim of employment discrimination to pay fees to protect her rights is contrary

Finally, Scott argues that this court should affirm the earlier order of the District Court dismissing Blair's complaint "with prejudice" because Blair did not file for arbitration within one year, as provided for in the arbitration agreement. The District Court did not address the statute of limitations outside of recognizing Blair's argument that the statute of limitations in the arbitration agreement conflicts with the underlying statutory limitations periods. We agree with the District Court that this question, and others relating to the statute of limitations,[6] should be deferred to the arbitrator.

IV.

CONCLUSION

For the reasons set forth above, we will reverse the decision of the District Court and remand for further factual inquiry into the costs of arbitration and Blair's ability or inability to pay for arbitration.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

to the public policy of Pennsylvania guaranteeing a costless forum for enforcing her rights, and that the arbitration agreement did not foreclose the claimant's opportunity to bring a claim before the PHRC. Blair's administrative complaint was dismissed by the PHRC for failure of proof or failure to cooperate. The question whether arbitration is contrary to Pennsylvania public policy is not at issue in this case, and we do not reach to decide it.

6. For example, Blair argues that the one-year limitation period in the agreement with Scott conflicts with the incorporated AAA rules that provide that timeliness should be based on the statutes of limitations in the underlying statutes on which the claims are based, and that the ambiguity should be construed against the maker of the contract. See, e.g., Burns v. Franklin Life Ins. Co., 301 A.2d 799, 804 (Pa. 1973).