

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2005

# Schlaflin v. Borowsky

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3019

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Schlaflin v. Borowsky" (2005). *2005 Decisions*. Paper 1374.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1374

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3019

———————

PAUL J. SCHLAFLIN,
Appellant

v.

RICHARD BOROWSKY; JAY F. FOX;
PHILLIP CAMPO; STEVE MENNONA;
GEORGE TRAMPLER; ROBERT C. HOLMES;
TOWNSHIP OF MARLBORO

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-04184)
District Judge:  Honorable Anne E. Thompson

———————

Argued March 9, 2005

Before:  NYGAARD, McKEE and RENDELL, <u>Circuit</u> <u>Judges</u>.

(Filed : April 12, 2005)

———————

Allan Marain     [ARGUED]
100 Bayard Street
P.O. Box 1030
New Brunswick, NJ  08903
    *Counsel for Appellant*

Martin J. McGreevy    [ARGUED]
P.O. Box 820
Oakhurst, NJ  07755
   *Counsel for Appellees*
   *Richard Borowsky and Phillip Campo*

John T. Bazzurro
Chamlin, Rosen, Uliano & Witherington
268 Norwood Avenue
West Long Branch, NJ  07764
   *Counsel for Appellee Jay F. Fox*

William J. Gearty    [ARGUED]
1222 Third Avenue
Spring Lake, NJ  07762
   *Counsel for Appellees*
   *Steven Mennona, George Trampler*
   *and Robert C. Holmes*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

I. Factual and Procedural Background

Paul Schlaflin appeals the order of the District Court granting summary judgment for Appellee Officers based upon qualified immunity.  As we write only for the parties, we include only such factual and procedural events as are necessary to our decision.  On September 11, 2001, Appellant, Schlaflin, painted the words "Death to the Sand Niggers" on his truck.  He then drove his truck from his home in Morganville, New Jersey, into Marlboro, New Jersey, where he left the truck in the parking lot of a bar.  Police received

2

a call from Ms. Rabig, who had seen the truck in the parking lot, reporting that the truck had the words on it. (App. 65a) The officers then went to the scene. Officer Borowsky arrived first, followed by Officers Campo, Mennona, Trampler and Chief Holmes. At some point, Detective Fox was called in because he specialized in investigating bias crimes. When Fox saw the truck, he ordered that Schlaflin be arrested. He also ordered that the words on the truck be covered and the truck towed to the police station.

Schlaflin was arrested and transported to police headquarters, where he was placed in a cell. He was charged with bias harassment under N.J.S. 2C:33-4d (since repealed). Police towed and impounded the truck, which they kept for approximately two and one-half months. As a condition of his release, Fox required Schlaflin to remove the lettering from the truck.

Charges were brought against Schlaflin, but he was subsequently found not guilty, based on the conclusion that the words on his truck constituted protected speech under the First Amendment. Schlaflin then brought suit against the officers, alleging violation of his freedom of speech, arrest without probable cause, false imprisonment, the seizure and impoundment of his truck, and civil conspiracy. The officers moved for summary judgment on the basis of qualified immunity, and this motion was granted. Schlaflin now appeals.[1]

---

[1] As the analysis of whether the officers were entitled to qualified immunity flows primarily from evaluation of his First Amendment claims and because Schlaflin does not thoroughly raise or discuss any other constitutional violations in his brief, we focus our

3

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

We have plenary review of the District Court's decision to grant summary judgment. See Blair v. Scott Specialty Gases, 283 F.3d 595, 602-03 (3d Cir. 2002). We apply the same standard as used by the District Court. Id.

## III. Discussion

The inquiry into whether qualified immunity is proper was laid out by the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), where the Court stated that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The Court later expanded the explanation of the inquiry into whether the law was clearly established in Saucier v. Katz, 533 U.S. 194, 202 (2001):

> [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (quotations omitted).

decision primarily on the alleged First Amendment deprivation.

4

The first question we must answer, therefore, is whether the officer's actions violated a clearly established right belonging to Schlaflin. The District Court found that Schlaflin's speech was not protected by the First Amendment under the standard set forth in Brandenburg v. Ohio, 395 U.S. 444 (1969). The Court in Brandenburg stated that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Id. at 447. Although we find that this is a close case, we ultimately conclude that the speech at issue here was protected because there was no threat of imminent unlawful action. The fact that the sole complaint about the truck came from Ms. Rabig, who had not witnessed any threat of violence or unruliness caused by the speech, bolsters this conclusion.

The next inquiry we must undertake is whether, despite the fact that we find that officers did violate Schlaflin's First Amendment rights here, they were unreasonable in doing so. We hold that they were not.

As stated above, the officers arrested Schlaflin for bias harassment pursuant to N.J.S. 2C:33-4d (subsequently repealed). At the time of this action, that statute stated:

> Except as provided in subsection (d), a person commits a petty disorderly persons offense if, with purpose to harass another, he:
> (a) Makes or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively course

5

language, or in any other manner likely to cause annoyance or alarm.

     (d) A person commits a crime of fourth degree if in committing an offense under this section, he acted, at least in part, with ill will, hatred or bias toward, and with a purpose to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity.

In this case, it was reasonable for the officers, with the language of the statute as a guide, to believe that their arrest of Schlaflin would not violate any clearly established right, given the fact that New Jersey had an existing statute which appeared to authorize such an arrest. The fact that the statute was later found to be unconstitutional does not change this conclusion. For example, in Blackhawk v. Commonwealth of Pennsylvania, 381 F.3d 202 (3d Cir. 2004), we had to decide whether individual officers of the Pennsylvania Game Commission were entitled to qualified immunity for their refusal to grant the plaintiff a waiver of a permit fee for keeping a wild animal when the plaintiff claimed that his reason for keeping the animal was religious. Subsequent to the Commission's refusal to grant the exemption, the statute under which the Commission justified the refusal was held unconstitutional. Regardless, we held that the defendants were entitled to qualified immunity because "in this case, the governing precedents were complex and developing. Although we now hold that the waiver procedure... is sufficiently open-ended to constitute a system of individual exemptions, a reasonable officer in the position of defendants could have concluded otherwise." Id. at 215.

Under the same logic, we hold that it was reasonable for the officers in the present case to conclude that the N.J.S. 2C:33-4d provided an adequate basis for believing the

6

arrest of Schlaflin was not in violation of his First Amendment rights. Thus, because we find that it would not have been clear to a reasonable officer in the defendants' position that their conduct violated a clearly established right, we hold that the officers were entitled to qualified immunity in this case. Therefore, we will affirm the order of the District Court.[2]

---

[2] Judge McKee agrees that the District Court did not err in granting summary judgment based upon qualified immunity under <u>Saucier</u> even if defendants violated plaintiff's First Amendment rights. However, Judge McKee is dubitante on the question of whether any such First Amendment violation occurred given the totality of circumstances here. Accordingly, he would not reach that question.