Cynthia DELASKI, Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

No. 01–4527.

United States Court of Appeals, Third Circuit.

Submitted Sept. 26, 2002.

Decided Oct. 31, 2002.

Before BARRY, AMBRO and GARTH, Circuit Judges.

## OPINION

### PER CURIAM.

Cynthia de Laski brought this employment discrimination lawsuit against her former employer, Merrill Lynch, Pierce, Fenner & Smith, Inc. She alleges that when Merrill Lynch terminated her employment it did so on the basis of sex in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, *et seq.*[1] The District Court granted summary judgment in favor of Merrill Lynch, holding that de Laski could not make out a *prima facie* case of sex discrimination and, alternatively, that she provided no evidence that Merrill Lynch's asserted non-discriminatory reasons for the termination were pretextual or that discrimination was more likely than not a motivating cause of the termination. We agree with the District Court's conclusion that de Laski can demonstrate neither pretext nor that discrimination was a motivating cause of her termination. We therefore affirm the summary judgment.[2]

## BACKGROUND

De Laski worked at Merrill Lynch as a financial consultant from 1982 until July 1992. She sues for discrimination only in regard to the termination of her employment in July 1992. She nonetheless alleges that during her years as a Merrill Lynch employee the company discriminated against her on the basis of sex in the allocation of office space, the distribution of unassigned accounts, the quality of the sales staff assigned to her, and by permitting a sexist environment in the office.

The events leading to de Laski's termination concerned the allocation of office space in Merrill Lynch's Bala Cynwyd, Pennsylvania, office, at which de Laski worked. Merrill Lynch renovated the Bala Cynwyd office in 1992. On July 12, while the renovation was ongoing, de Laski received a copy of a floor plan that assigned private offices in the Bala Cynwyd space after the renovation. Upon discovering that she would not receive a private office, which she believed was due to gender discrimination, de Laski "blew her top." She went to the head of the Bala Cynwyd office, Resident Vice President ("RVP") Charles Haraburda.

Haraburda was out of the office when de Laski came looking for him, and an administrative assistant, Fran Duffy, so informed de Laski. She nonetheless demanded to see Haraburda. She yelled words to the effect of: "I don't care if he's with the (obscenity) Pope, I want to see him now." Duffy made some attempt to calm de Laski, who shortly thereafter returned to her desk.

Duffy and Haraburda's secretary reported to Haraburda what had occurred. When Haraburda returned to the office, he asked de Laski if she had made the "Pope" statement, and she admitted that she had. Haraburda then fired her.

## DISCUSSION

We review *de novo* the District Court's grant of summary judgment. *Blair v. Scott Specialty Gases,* 283 F.3d 595, 602–03 (3d Cir.2002).

The *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

---

1. The analysis of PHRA claims is identical to the Title VII inquiry. *See Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 317 n. 3 (3d Cir.2000). We therefore do not separately discuss the former.

2. Because our decision as to the pretext issue resolves this appeal, we do not address the question whether de Laski could establish a *prima facie* case of discrimination.

(1973), burden-shifting analysis applies to this case. Under this analysis,

> a plaintiff must initially establish a minimal prima facie case—essentially, that he or she is a member of a protected class and was qualified for an employment position, but that he or she was ... fired from it "under circumstances that give rise to an inference of unlawful discrimination."

*Waldron v. SL Industries, Inc.*, 56 F.3d 491, 494 (3d Cir.1995) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

"Once the plaintiff establishes his or her prima facie case, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for its employment decision." *Id.* If the defendant does so, the plaintiff, in order to survive a motion of summary judgment,

> generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994).

De Laski argues that the non-discriminatory reasons proffered by Merrill Lynch to explain her termination are a pretext hiding the real reason for doing so—discrimination. We discuss this issue first and conclude as a matter of law that de Laski cannot show that any of the three proffered reasons for her termination were pretextual.

De Laski also asserts that evidence of sex discrimination and harassment that she suffered while working at Merrill Lynch would allow a jury reasonably to find that discrimination was more likely than not a motivating cause of her termination. We address this argument second and also reject it.

## A. Reasons for the Termination

■ Haraburda testified that he fired de Laski because of her "admitted mistreatment of an office subordinate, coupled with her prior history of poor interpersonal relationships with subordinates and her below average production performance." As noted above, de Laski argues that each of these reasons is merely a pretext for discrimination.

### 1. *Mistreatment of a subordinate*

De Laski does not deny that she made the "Pope" statement to an administrative assistant. She contends instead that if she were a man Merrill Lynch would not have fired her on account of her behavior on July 12.

The District Court correctly recognized, however, that de Laski offered no evidence that Merrill Lynch retained any male employee who acted similarly to de Laski. To the contrary, Haraburda testified that he fired two male employees for using abusive language (albeit one of these occasions involved the use of such language to a client and the factual scenario behind the other termination is not clear from the record). *See In re Carnegie Ctr. Assocs.*, 129 F.3d 290, 297 (3d Cir.1997) (noting that an employer had never had another employee similarly-situated to the plaintiff, but nonetheless affirming summary judgment for the employer on the ground that the plaintiff could not demonstrate that the employer would have treated a non-similarly-situated employee differently).[3] De

---

3. De Laski also argues that her behavior on   July 12 does not number among the reasons

Laski cannot show that Merrill Lynch used her July 12 misconduct as a pretext to terminate her on the basis of sex.

### 2. *Poor interpersonal relationships with subordinates*

Haraburda testified that, when he became the RVP of the Bala Cynwyd office in March 1992, members of the office told him that de Laski had a history of publicly mistreating her sales assistants. De Laski offers no evidence to the contrary. She argues instead that, before firing her, Haraburda should have counseled her on the issue of her treatment of sales assistants. De Laski points out that, when Haraburda began at the Bala office, he counseled two male employees about their behavior problems. But the behavior about which Haraburda counseled those employees—for instance, smoking too much in the office (when smoking was allowed in the office) and speaking too authoritatively and harshly (but not abusively or with profanity) to other employees—does not equate to the outburst prompting de Laski's termination. There is no evidence that Haraburda counseled rather than terminated any employee who acted in a manner similar to de Laski's July 12 behavior. In this context, de Laski also failed to raise a material issue of fact as to whether Merrill Lynch's proffered reason is pretextual.

### 3. *Below average production*

Merrill Lynch ranks its brokers according to the number of years they have worked as a broker, their production (the amount of services provided to clients), the amount of assets under their control, and the number of new accounts they bring to the firm. In the last five years of her employment with Merrill Lynch, de Laski performed below the average (and frequently in the bottom twenty percent) in each of these categories as compared with employees of similar length of service.

De Laski points out that she performed well during her first two years at Merrill Lynch and that she later scored high in certain performance competitions. This evidence cannot, however, overcome the evidence of her largely below average production in the last five years of her employment. Again, de Laski has provided no evidence from which a jury could reasonably find pretext.

\*　　\*　　\*　　\*　　\*　　\*

The District Court correctly concluded that de Laski could not establish that any of Merrill Lynch's asserted non-discriminatory reasons for the termination of her employment were pretextual.

### B. Other Claims of Discrimination

The next issue to address is whether de Laski can otherwise demonstrate that discrimination on the basis of sex was a motivating cause of the termination. For this question we consider the evidence de Laski provided of sexual discrimination and harassment during her employment with the firm. *See Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 523 (3d Cir.1992) ("In proving that the employer's motive was more likely than not the product of a discriminatory reason instead of the articulated legitimate reason, sufficiently strong evidence of an employer's past treatment of the plaintiff may suffice.").

---

Merrill Lynch has listed in its employment guidelines that warrant immediate termination of an employee. She is mistaken. The guidelines categorize "using abusive language" as "serious misconduct," and warn: "Any serious misconduct is grounds for immediate termination." App. 178.

### 1. *Allocation of office space*

■ De Laski argues that she was entitled to a private office and that Merrill Lynch discriminated against her on the basis of sex by refusing to allot one to her. Haraburda decided which brokers would receive private offices after the Bala Cynwyd renovation. In a declaration, Haraburda testified that he believes he assigned offices according to each broker's production numbers. In his deposition, Haraburda testified that, in addition to the broker's production, he considered the length of the broker's service and the number of new accounts the broker had obtained. De Laski points out that Haraburda's declaration and deposition testimony are somewhat inconsistent. She argues that, by providing inconsistent testimony, Haraburda has lessened his credibility and thus that a material issue of fact exists as to whether Haraburda terminated her employment on the basis of sex (again, discriminatory termination—not the assignment of office space—is the only issue upon which de Laski actually sued).

In 1991 de Laski had a lower production total than any employee who was assigned an office in 1992. In 1990, she had a slightly higher production total than three male employees who received offices. Haraburda explained in his deposition, however, that those three employees had worked as brokers for only three or four years each. Consequently, their production totals—almost equal to de Laski's production after ten years of experience— were more impressive than she had.

De Laski has created a chart in which she ranks herself and four male brokers who received offices. Not surprisingly, de Laski comes out as the "best" employee on the chart. Even assuming that in assigning office spaces Haraburda would consider each category of information included in de Laski's chart, there is no evidence that

he would give each category the same weight that de Laski assigns it. Indeed, his declaration and deposition testimony suggest that he would not. De Laski's view as to how Merrill Lynch should evaluate its employees' work and her belief that she deserved an office cannot create an inference that a discriminatory motive drove Haraburda's decision to terminate her employment. *See Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir.1991) (The plaintiff's "view of his performance is not at issue; what matters is the perception of the decision maker."), *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 2. *Distribution of unassigned accounts and quality of support staff*

■ De Laski has offered no evidence other than her own opinion that Merrill Lynch distributed unassigned accounts or assigned support staff in a discriminatory fashion. As the District Court explained, de Laski's evidence consists, for example, of her assertions that a "less deserving" man received a "better" office. Moreover, most, if not all, of the unfair assignments of which de Laski complains occurred before Haraburda began working at the Bala Cynwyd office. Given the attenuated link between these allegations and Haraburda's decision to terminate de Laski, de Laski's personal opinion testimony as to the assignment of accounts and staff cannot raise an issue of material fact as to the termination decision. *See id.*

### 3. *Sexist work environment*

■ De Laski offered the following evidence of a sexist work environment at Merrill Lynch: She testified that other Merrill Lynch brokers "told dirty jokes, and distributed unprofessional cartoons"; the company sponsored a luau party in

1985 or 1986 at which brokers acted as if they were at "a frat party"; an administrative manager (not the Bala Cynwyd RVP), Roger Rathmel, called her "Sweetie" and "Honey" and told her that she needed "to get laid more"; and another broker, Jack Rodenbaugh, asked her more than once if she wouldn't prefer being "barefoot and pregnant" to being a broker.

De Laski has provided some evidence of sexual harassment. At the same time, however, when de Laski complained to the then-current RVP, Bill Leckey, about Rodenbaugh's comments to her, Leckey made Rodenbaugh apologize to de Laski, and Rodenbaugh did not make any similar comments thereafter. De Laski never complained to more senior management at Merrill Lynch about any of the other inappropriate behavior of her co-workers, and there is no evidence that Merrill Lynch otherwise knew of such behavior. Moreover, de Laski presented no evidence that Haraburda—who made the decision to terminate de Laski's employment—engaged in any sexual harassment. And de Laski did not testify that any of the alleged harassment occurred after Haraburda took over as RVP of the Bala Cynwyd office. *See Ezold*, 983 F.2d at 545 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). Given all of the above, the evidence de Laski presented of a sexist work environment does not raise a material issue of fact as to whether Haraburda's decision to terminate her employment was based on unlawful discrimination.

## CONCLUSION

De Laski cannot show that the non-discriminatory reasons proffered by Merrill Lynch for the termination of her employment were pretext for discrimination on the basis of sex. Likewise, the evidence she presented regarding sex discrimination and harassment during her employment at Merrill Lynch does not raise a material issue of fact as to whether discrimination was a motivating cause of the termination. Accordingly, the decision of the District Court is affirmed.