# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-3722

ROY CARBAJAL,

*Plaintiff-Appellant,*

v.

H&R BLOCK TAX SERVICES, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 626—**John A. Nordberg**, *Judge.*

ARGUED MAY 17, 2004—DECIDED JUNE 24, 2004

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 1999 H&R Block prepared Roy Carbajal's 1998 federal tax return. Its calculations showed that Carbajal could expect a refund of $5,001. Carbajal applied for what Block calls a "rapid refund," a transaction that couples a loan with the assignment of the refund as security for repayment. The documents underlying this refund-anticipation loan provide that the lender also may use the money to retire any earlier year's loan (a balance due could exist if the actual refund was less than anticipated and the taxpayer did not return

the excess), and that any dispute between the parties will be arbitrated. After Carbajal signed on the dotted line, he received about $1,800 in cash; the balance was used to pay off an earlier loan that a lender in Block's program contended was outstanding. Carbajal filed this suit under the Fair Debt Collection Practices Act, plus other federal and state laws, contending that he had been snookered. Block and the other defendants asked the district court to refer the dispute to arbitration.

Before the district judge had decided whether the dispute must be arbitrated, Carbajal received a notice that he is a member of a class in other litigation pending against Block. Carbajal then asked Judge Zagel, before whom the class suits had been consolidated, for leave to intervene and represent a distinct subclass of persons whose refund loans had been used to pay down earlier indebtedness. Judge Zagel denied this motion and approved a settlement that encompassed (and barred) all of Carbajal's claims. We reversed that decision and tossed out the settlement. See *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002). Negotiations on a new settlement that would include claims such as Carbajal's came to naught, see *Reynolds v. Beneficial National Bank*, 260 F. Supp. 2d 680 (N.D. Ill. 2003), and Judge Nordberg then turned to Carbajal's independent suit—which he dismissed in reliance on the arbitration clause. 2003 U.S. Dist. LEXIS 16458 (N.D. Ill. Sept. 16, 2003). An outright dismissal in favor of arbitration is a "final decision," see *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000), entitling Carbajal to appeal under 28 U.S.C. §1291.

Paragraph 6 of the refund-anticipation loan (RAL) agreement provides:

> By signing this RAL application or endorsing my 1999 RAL check which contains the Loan Agreement (collectively the "Agreements") I hereby

agree that any claim or dispute (whether in contract, tort or otherwise) in any way relating to the Agreements or such similar agreements for prior years involving the same parties or relating to the relationships of such parties, including the validity or enforceability of this arbitration provision or any part thereof (collectively the "Claim"), shall be resolved, upon the election of either party, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum in effect at the time the Claim is filed. No class actions are permitted without the consent of the parties hereto. Rules and forms of the National Arbitration Forum may be obtained by calling 1-800-474-2371 and all Claims shall be filed by certified mail at any National Arbitration Forum office or at Post Office Box 50194, Minneapolis, Minnesota 55405. Any participatory arbitration hearing that I attend will take place in the federal judicial district in which I live. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16. The award of the Arbitrator shall apply relevant law pursuant to Section 3G above and provide written, reasoned findings of act and conclusions of law, and shall not be subject to appeal, unless the arbitrator's decision clearly conflicts with applicable law. Judgment upon the award may be entered in any court having jurisdiction. Nothing in this arbitration provision shall be construed to prevent HB's use of offset or other contractual rights involving payment of my income tax refund or other amount on deposit with HB to pay off any RAL debts or ERO or other fees now or hereafter owed by me to HB or any other RAL Lender or ERO or third party pursuant to the

> Agreements or similar prior agreements. The parties hereto acknowledge that they have a right to litigate Claims in court, but they prefer to resolve any such Claims through arbitration and hereby waive their rights to litigate such Claims in court upon election of arbitration by either party. The parties hereto further agree that any award hereunder shall be based on the claimant's actual compensatory, economic damages, and equitable relief as appropriate, plus proportional punitive damages, if any are deemed appropriate in the Arbitrator's discretion. Each party hereto shall bear the expense of their respective attorney's fees regardless of which party prevails. The decision of the Arbitrator and the amount of any Award shall be kept confidential by the parties hereto. This arbitration provision shall supersede any prior arbitration provision contained in any previous RAL or RAC application agreement.

It would be hard to draft a broader clause. This covers all claims "relating to" the 1999 loan plus all disputes "relating to" any earlier tax year and any preceding refund-anticipation loan. It also covers any dispute about "the validity or enforceability of this arbitration provision or any part thereof"—a clause evidently tailored to come within the rule that people may agree to arbitrate whether a given dispute is arbitrable. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); see also *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967). If so, this litigation is pointless. Even if we indulge the district court's assumption that the court determines arbitrability, Carbajal still must arbitrate.

Carbajal's lead argument is that Block and the other defendants waived their right to arbitrate by trying to include him in the master settlement. Yet defendants have urged arbitration from the get-go; it was Carbajal who tried

to intervene in the class action. The ensuing delay and negotiation do not cancel the parties' contractual choice of forum in the event matters could not be resolved amicably. *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004), says all that is necessary about that subject. As in *American Patriot*, defendants did not ask the judge for a decision on the merits and fall back on arbitration only when things turned sour; they have never sought judicial resolution of any aspect of the dispute.

Is enforcement of this clause unconscionable? How could it be? Arbitration is just a forum; people may choose freely which forum will resolve their dispute. This is so when the agreement concerns venue within a judicial system, see *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), and equally so when the agreement specifies a non-judicial forum. See, e.g., *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Rodriguez de Quijas v. Shearson/ American Express, Inc.*, 490 U.S. 477 (1989); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).

The whole deal, including ¶6, was offered on a take-it-or-leave-it basis, which leads Carbajal to call it a "contract of adhesion," but few consumer contracts are negotiated one clause at a time. Forms reduce transactions costs and benefit consumers because, in competition, reductions in the cost of doing business show up as lower prices (here, a slightly lower rate of interest on the loan). The forum-selection clause in *Carnival Cruise Lines* was printed on the back of a ticket, and the Court nonetheless enforced it—just as the terms of limited warranties and many other provisions not negotiated separately are enforced routinely. We observed in *Metro East Center for Conditioning and Health v. Qwest Communications International, Inc.*, 294 F.3d 924 (7th Cir. 2002), that what holds true for warranties holds true for arbitration. See also, e.g., *Koveleskie v. SBC Capital*

*Markets, Inc.*, 167 F.3d 361 (7th Cir. 1999); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997).

Section 2 of the Federal Arbitration Act says that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Thus arbitration specified in a form contract must be treated just like any other clause of the form. Unless Delaware (whose law applies) would refuse to enforce limited warranties, clauses curtailing the time available to file suit, and the like, then this arbitration clause must be enforced. Carbajal does not offer any reason to think that Delaware generally refuses to enforce details on the back of an auto-rental contract or equivalent form; thus this agreement to arbitrate is valid. The cry of "unconscionable!" just repackages the tired assertion that arbitration should be disparaged as second-class adjudication. It is precisely to still such cries that the Federal Arbitration Act equates arbitration with other contractual terms. See *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-71 (1995). People are free to opt for bargain-basement adjudication—or, for that matter, bargain-basement tax preparation services; air carriers that pack passengers like sardines but charge less; and black-and-white television. In competition, prices adjust and both sides gain. "Nothing but the best" may be the motto of a particular consumer but is not something the legal system foists on all consumers.

As for the contention that portions of this clause are incompatible with federal law—because, say, they require the parties to bear their own costs, while the FDCPA entitles prevailing litigants to recover attorneys' fees— there are two problems. First, the arbitrator rather than the court determines the validity of these ancillary provisions. See *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003); see also *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537

U.S. 79 (2002). Second, no general doctrine of federal law prevents people from waiving statutory rights (whether substantive or procedural) in exchange for other things they value more, such as lower prices or reduced disputation. See *Metro East*, 294 F.3d at 928-29 (collecting authority). Whether any particular federal statute overrides the parties' autonomy and makes a given entitlement non-waivable is a question for the arbitrator.

AFFIRMED


A true Copy:

Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*