**BELLEVUE DRUG CO., Robert Schreiber, Inc., d/b/a Burns Pharmacy, and Rehn–Huerbinger Drug Co., d/b/a Parkway Drugs # 4, on behalf of themselves and all others similarly situated, and the Pharmacy Freedom Fund and the Nat'l Community Pharmacists Ass'n, Plaintiffs,**

v.

**ADVANCE PCS, Defendant.**

**No. CIV.A. 03–4731.**

United States District Court,
E.D. Pennsylvania.

Aug. 20, 2004.

H. Laddie Montague, Jr., Jerome M. Marcus, Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA, for Bellevue Drug Co., Robert Schreiber, Inc., dba Burns Pharmacy, Rehn–Huerbinger Drug Co., dba Parkway Drugs # 4, on Behalf of Themselves and all others Similarly Situated, Pharmacy Freedom Fund, National Community Pharmacists Association, Plaintiffs.

E. Marcellus Williamson, Washington, DC, Erik F. Dyhrkopp, Bell Boyd & Lloyd LLC, Chicago, IL, J. Thomas Rosch, Latham & Watkins LLP, San Francisco, CA, Michael E. Martinez, Michael Sennett, Paula W. Render, Scott M. Mendel, Victor E. Grimm, Bell Boyd & Lloyd LLC, Chicago, IL, Stephen J. Spiegelhalter, Washington, DC, Steven E. Bizar, Eliot G. Long, Buchanan Ingersoll, P.C., Philadelphia, PA, for Advance PCS, Defendant.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

The factual background that give rises to this lawsuit and the specific claims asserted by plaintiffs are discussed in detail in the Court's opinion in *Bellevue Drug Co. v. Advance PCS*, No. 03–4731, 2004 WL 724490, 2004 U.S. Dist. LEXIS 3627 (E.D.Pa. Mar. 2, 2004) and do not bear repeating here. For present purposes, it is sufficient to reiterate only that plaintiffs in this case are individual pharmacies and several pharmacy trade organizations, who

have brought a section 1, Sherman Act, 15 U.S.C. § 1, action against Advance PCS ("defendant"), a prescription benefit manager that, among other things, purchases drugs and dispensing services from the pharmacies pursuant to a written agreement (hereinafter referred to as the "Pharmacy Provider Agreement" or "PPA") between the individual pharmacy and the defendant. Presently before the Court is defendant's motion to seek enforcement of the arbitration clause contained in the PPA. For the reasons provided below, the motion will be granted.

## II. DISCUSSION

### A. *Applicable Standard.*

■ Motions to compel arbitration are reviewed, in the first instance, under the well-settled summary judgment standard set forth in Fed.R.Civ.P. 56(c). *See E-Time Sys., Inc. v. Voicestream Wireless Corp.,* No. 01–5754, 2002 WL 1917697, *4, 2002 U.S. Dist. LEXIS 15568, at *16 (E.D.Pa. Aug. 19, 2002) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 n. 9 (3d Cir.1980)); *Trott v. Paciolla,* 748 F.Supp. 305, 308 (E.D.Pa. 1990). Therefore, movants must prove through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... that there is no genuine issue as to any material fact and that [they are] entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Versarge v. Township of Clinton N.J.,* 984 F.2d 1359, 1361 (3d Cir.1993).

### B. *The Parties' Contentions.*

Defendant contends that each of the pharmacy plaintiffs entered into identical but separate PPAs with Advance PCS containing an arbitration agreement (the "Arbitration Agreement"). According to defendant, the Arbitration Agreement is valid and enforceable and plaintiffs' claims fall within its scope. To the extent that there is any disagreement as to whether or not defendant has waived the right to seek arbitration by litigating the instant case in this Court or whether or not certain provisions of the PPA render the Arbitration Agreement unenforceable, defendant asserts that these questions are not for the Court to decide in the first instance, and that rather, these defenses to enforcement of the Arbitration Agreement—presumably based on state contract law—must be submitted to an arbitrator.

Plaintiffs, on the other hand, contend that defendant has waived any right to arbitration by demonstrating an intent to resolve the underlying controversy through litigation rather than arbitration. Plaintiffs also argue that the Arbitration Agreement is "unenforceable" because the PPA limits statutory remedies otherwise available to plaintiffs under the antitrust laws, and because certain fee-shifting and cost-sharing provisions of the Arbitration Agreement financially impair plaintiffs from proceeding with arbitration. Thus, plaintiffs contend that they are effectively precluded from vindicating their statutory rights in the arbitral forum.

### C. *Analysis.*

■ There is a strong federal policy in favor of the resolution of disputes through arbitration. *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 263 (3d Cir.2003)(citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765

(1983)). Accordingly, federal law presumptively favors the enforcement of arbitration agreements. *Alexander*, 341 F.3d at 263. Before a federal district court entertaining a motion to compel arbitration may order a reluctant party to arbitrate, however, the Federal Arbitration Act (FAA) "requires the court to engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) (overruled by implication on other grounds by *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), as recognized by *Dean Witter Reynolds, Inc. v. Druz,* 71 Fed.Appx. 941, 2003 U.S.App. LEXIS 15523 (3d Cir. Aug. 4, 2003)). In making this determination, courts are to look to the relevant state law of contracts. *Alexander,* 341 F.3d at 264.

1. *The Substantive Scope the Agreement.*

■ Section 9.5 of the PPA provides: *Arbitration.* Any an all controversies in connection with or arising out of this Agreement will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of law, and may only award remedies provided in this Agreement. The award of the arbitrator will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Arbitration under this provision will be conducted in Scottsdale, Arizona, and Provider hereby agrees to such jurisdiction, unless otherwise agreed to by the parties in writing or mandated by Law, and the expenses of the arbitration, including at-

torneys' fees will be paid for by the party against whom the award of arbitration is rendered. This Section 9.5 and the parties' rights hereunder shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

Pharmacy Provider Agreement, at p. 6–7. Under the clause, it is unmistakably clear that the instant dispute falls within the scope of the Arbitration Agreement. *See id.* (applying to "[a]ny and all controversies in connection with or arising out of this Agreement"). Plaintiffs have not contested the fact that the scope of the Arbitration Agreement encompasses their antitrust claims against defendant.

2. *Waiver.*

Plaintiffs do argue, however, that the motion to compel arbitration should be denied because, by actively litigating the action for the last ten months in this Court, defendants have effectively waived any right to arbitrate under the PPA. Plaintiffs point to the following activity, which has occurred in this case since the complaint was filed on August 15, 2003, to prove that waiver has occurred:

1. A motion to dismiss was filed by Advance PCS on September 25, 2003;

2. Corporate disclosures were filed by Advance PCS on November 5, 2003;

3. The motion to dismiss was denied by the Court on March 2, 2004;

4. A motion for reconsideration and motion for interlocutory appeal was filed by Advance PCS on March 16, 2004;

5. An answer to the complaint was filed by Advance PCS on March 16, 2004;

6. A joint request to continue the pretrial conference was filed by Advance PCS on April 21, 2004;

7. The motion for reconsideration was denied by the Court on May 14, 2004;

8. A supplemental corporate disclosure statement was filed by Advance PCS on May 17, 2004;

9. The instant motion to compel arbitration was filed by Advance PCS on June 21, 2004; and

10. A motion to continue the Rule 16 conference was filed by Advance PCS on June 21, 2004, which the Court granted thereby causing the initial pretrial conference and the hearing on the motion to compel arbitration to be moved to July 29, 2004.

■ While waiver is recognized in the Third Circuit in circumstances where the party seeking arbitration has actively litigated the case, waiver "is not to be lightly inferred." *PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1068 (3d Cir.1995). Before addressing the issue head on, the Court pauses to consider the threshold question of whether or not the arbitrator or the Court should decide the issue of waiver.

■ Recently, in *Howsam,* the Supreme Court explained that "question[s] of arbitrability," that is, whether the parties have agreed to submit a particular dispute to arbitration, are limited in scope and primarily concerned "gateway disputes about whether the parties are bound by a given arbitration clause ... [and] whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." 537 U.S. at 83–84, 123 S.Ct. 588. The Supreme Court instructed that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* at 84, 123 S.Ct. 588 (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964))(emphasis in original)(internal quotations omitted)).

The Supreme Court also reiterated its view, first articulated in *Moses,* that "the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.' " 537 U.S. at 84, 123 S.Ct. 588 (quoting *Moses,* 460 U.S. at 24–25, 103 S.Ct. 927)).

Since *Howsam,* the majority of the Courts of Appeal to have considered the issue in precedential opinions have concluded that waiver is an issue that presumptively should be presented to the arbitrator in the first instance. *See Shaw's Supermarkets, Inc. v. UFCW, Local,* 321 F.3d 251, 254 (1st Cir.2003); *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38,* 351 F.3d 43, 46 (2d Cir. 2003); *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 430 (5th Cir.2004); *Carbajal v. H & R Block Tax Servs.,* 372 F.3d 903 (7th Cir.2004); *Nat'l American Ins. Co. v. Transamerica Occidental Life Ins. Co.,* 328 F.3d 462, 466 (8th Cir.2003); *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1107 (11th Cir.2004); *Microchip Tech. Inc. v. U.S. Philips Corp.,* 367 F.3d 1350, 1359 n. 7 (Fed.Cir.2004); *but see Highlands Wellmont Health Network v. John Deere Health Plan,* 350 F.3d 568, 574 (6th Cir. 2003)(court considered waiver issue on the merits). Consistent with this majority, this Court also concluded in a recent case that waiver is presumptively an issue for the arbitrator to consider in the first instance. *See Leslie–Hughes v. Am. Express Fin. Advisors, Inc.,* 2004 WL 1465669, \*\*2–3, 2004 U.S. Dist. LEXIS 12334, at \*6 (E.D.Pa. Jun. 29, 2004) (relying on *Howsam* ). Defendant has not presented any evidence which would rebut this presumption.[1] Thus, it appears that in this case the issue of whether the defendant, by litigating in this Court the present case, has waived the right to demand

---

1. Although the courts speak of the issue of being "presumptively" subject to arbitration, the courts have not addressed the type of showing necessary to rebut the presumption.

arbitration should properly be presented in the first instance to the arbitrator.

■ However, mindful of the Third Circuit's recent decision in *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596–97 (3d Cir.2004), in which the court, without invoking the presumption of arbitrability discussed in *Howsam*, addressed the merits of the waiver defense without remand to the arbitrator, the Court will consider plaintiffs' contention that defendant has waived the use of the arbitral forum for resolution of the dispute.

■ "[P]rejudice [to the party opposing arbitration] is the touchstone for determining whether the right to arbitration has been waived." *Faragalli*, 61 F.3d at 1068 (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir.1992)). As instructed by the Third Circuit in *Hoxworth*, "a determination of prejudice ... incorporates not only the timeliness or lack thereof of a motion to arbitrate but also the degree to which the party seeking to compel arbitration has contested the merits of its opponents claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to which both parties have engaged in discovery." 980 F.2d at 926–27.

In plaintiffs' view, the *Hoxworth* factors weigh in favor of finding waiver. One, more than ten months have passed since the complaint was filed. Two, defendant has contested the merits of the case by filing a motion to dismiss and a motion for reconsideration/interlocutory appeal. Three, defendant has assented to this Court's pretrial orders. Finally, defendant has, prior to the filing of the motion to compel arbitration, given no indication to plaintiffs of its intent to arbitrate.

Plaintiffs argue that the only *Hoxworth* factor not in their favor is that no discovery has been exchanged at this point.

■ "[W]aiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Faragalli*, 61 F.3d at 1068–69 (quoting *Gavlik Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975)). Indeed, in the cases cited by plaintiffs where a district court did, in fact, find waiver, the motion to compel arbitration was made *after* a significant period of discovery. To the contrary, in this case, formal discovery has not been exchanged by the parties, a Rule 16 conference has not been held, and no scheduling order has been issued by the Court setting forth a case management or discovery schedule. *See* Fed.R.Civ.P. Rules 16(c), 26(f).

It is true that a motion to dismiss has been aggressively litigated by the parties and ruled on by the Court in this case. This factor alone, under the circumstances of this case, is insufficient to establish prejudice. *See Wood v. Prudential Ins. Co. of Amer.*, 207 F.3d 674, 680 (3d Cir.2000)(finding that a ruling on a motion to dismiss does not overcome the presumption in favor of arbitration unless it can be shown that the arbitrator would have decided the merits of the claim differently); *see also Faragalli*, 61 F.3d at 1069 (motion to dismiss for lack of prosecution does not prejudice the party opposing arbitration and does not warrant waiver simply because the motion could have been decided in favor of the party seeking arbitration). This is particularly so here where the Court's ruling on the motion to dismiss dealt only with pleading issues of law placing the parties back at the starting gate of the litigation.

Under the circumstances presented, the Court finds that plaintiffs have not been prejudiced by defendant's delay in asserting the Arbitration Agreement.[2] Although some time has passed since the filing of the complaint and a motion to dismiss has been ruled on by the Court, the case stands essentially as it did ten months ago, i.e., with the pleadings now completed and the matter ready to proceed to discovery under a yet to be issued case management order. Thus, the Court finds that the Arbitration Agreement has not been waived.

### 3. *Unenforceability.*

#### a. *Limitations on Remedies Available by Statute.*

Plaintiffs also argue that the motion to compel arbitration should be denied because the Arbitration Agreement may cause plaintiffs to forgo substantive rights afforded by the federal antitrust laws. The specific rights that plaintiffs believe are foreclosed by the agreement to arbitrate in the case are the availability of treble damages, reasonable attorneys' fees, and injunctive relief. In support, plaintiffs point to two provisions (Sections 7.1 and 7.2) of the PPA addressing limitations on liability and indemnification.[3] Plaintiffs also point to a "loser pay all" provision of the Arbitration Agreement and argue that the risk of having to pay all the costs of arbitration would prevent plaintiffs from enforcing their rights in the arbitral forum.

 As a rule, generally applicable legal and equitable defenses may be interposed to invalidate an agreement to arbitrate. 9 U.S.C. § 2; *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 179 (3d Cir.1999)(citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). In assessing whether these types of defenses will bar enforcement of an arbitration agreement, state law is to be applied. *Alexander*, 341 F.3d at 264; *Harris*, 183 F.3d at 179. In Pennsylvania, the state law applicable here, courts "have long declined to enforce contracts that are contrary to public policy." *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 539 (3d Cir.1996)(applying Pennsylvania law). Thus, the Court agrees that if the arbitra-

---

**2.** At the hearing, plaintiffs were unable to pinpoint any specific prejudice, other than delay, that was caused by defendant's motion to compel arbitration. Hearing, Tr. at 28–29.

**3.** Section 7.1 of the PPA provides:

*Limitation on Liability.* PCS shall not be liable for any claim, injury, demand or judgment based upon contract, tort, or other grounds (including warranty of merchantability) arising out of the sale, compounding, dispensing, manufacturing, or use of any drug or device dispensed by or any Pharmacy Services provided by the Provider under this Agreement. In no event is either party liable to the other party for indirect, consequential or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation or loss of customers or business.

PPA, at p. 5.

Section 7.2 of the PPA provides:

*Indemnification.* Provider agrees to indemnify and hold PCS, its shareholders, directors, employee, agents and representatives free and harmless for, from and against any and all liabilities, losses, settlements, claims, demands, and expenses of any kind (including attorneys' fees and costs), that may arise out of: (I) any actual or alleged malpractice, negligence or misconduct of Provider in the performance or omission of any act or responsibility assumed by Provider under this Agreement, or (ii) the sale, compounding, dispensing, failure to sell, manufacturing or use of a drug or device dispensed by Provider of Pharmacy Service provided by Provider under this Agreement.

*Id.*

tion clause violates public policy for the reasons argued by plaintiffs, it will not be enforced.

As with the issue of waiver, the threshold question of who decides, in the first instance, whether the Arbitration Agreement violates public policy must be answered before proceeding further. In order to supply the answer, the Court must wade into the ebb and flow of recent Supreme Court and Third Circuit decisions on the issue.

In *Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 224–225 (3d Cir. 1997), plaintiff brought a sex discrimination suit against her employer under the New Jersey Law against Discrimination (NJLAD), N.J.S.A. 10:5–1 *et seq.* On her job application, plaintiff signed a certification agreeing to arbitrate "all employee discrimination claims, including statutory claims and claims based on sex." *Id.* at 224. Based on this agreement, the employer filed a petition to compel arbitration, which the district court granted. *Id.* at 225. On appeal, plaintiff argued that "because attorney's fees, a two-year statute of limitations, discovery, and punitive damages are all available under the NJLAD, any agreement like the Arbitration Agreement which prospectively deprives and employee of these rights runs counter to public policy." *Id.* at 230.

The Third Circuit affirmed the district court's decision to compel arbitration finding that the FAA did not preempt the NJLAD and that the issues raised by plaintiff were for the arbitrator to consider. *Id.* at 230. Particularly relevant here is the Third Circuit's statement in the opinion that:

> [o]nce a dispute is determined to be validly arbitrable, all other issues are to be decided at arbitration. Since the purpose of the FAA is to ensure that agreements to arbitrate are enforced, a

court compelling arbitration should preserve the remaining disputed issues for the arbitrator to decide. *Any argument that the provisions of the Arbitration Agreement involve a waiver of substantive rights afforded by the state statute may be presented in the arbitral forum.*

*Id.* at 231 (emphasis added).

Although the Third Circuit agreed that the question of whether or not the waiver of forum-related rights such as the availability of litigation-type discovery and a jury trial (and found that the waiver of these rights was enforceable) should be decided by the court, the Third Circuit preserved for the arbitrator in that case to decide whether or not plaintiff had waived the specific substantive rights afforded by the statute under which plaintiff asserted her claims, i.e., attorney's fees, the statute of limitations, and the availability of punitive damages. *Id.* at 231–232.

Three years after *Great Western* was decided, the Supreme Court decided *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)("*Green Tree I*"), a case which plaintiffs apparently argue cast some doubt on the validity of *Great Western.*

In *Green Tree I,* a plaintiff brought suit in the district court under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq. Id.* at 83, 121 S.Ct. 513. The loan agreement executed by the parties contained an arbitration clause. *Id.* at 82–83, 121 S.Ct. 513. Under the arbitration agreement, defendants moved to compel arbitration. *Id.* at 83, 121 S.Ct. 513. The plaintiff argued that, although the arbitration agreement was valid and the dispute fell within the scope of the arbitration agreement, she lacked the financial resources to arbitrate and would, therefore, have to forgo her claims if compelled to

arbitrate. *Id.* at 83, 121 S.Ct. 513. The Court of Appeals for the Eleventh Circuit found that the arbitration agreement, in failing to address payment of arbitration fees, arbitrators' costs, and other arbitration expenses, posed a risk that plaintiff's ability to vindicate her statutory rights would be undone by "steep" costs and that the agreement was therefore unenforceable. *Id.* at 84, 90, 121 S.Ct. 513. The Supreme Court reversed, *id.* at 84, 121 S.Ct. 513, finding that the plaintiff had the burden of showing that the costs of arbitration were "prohibitively expensive," *id.* at 91–92, 121 S.Ct. 513. Most importantly for our purposes, the Supreme Court took upon itself, rather than remanding to the arbitrator, the task of deciding whether the plaintiff had satisfied the burden, finding that she had not. *Id.* at 92, 121 S.Ct. 513.

Next in time, the Third Circuit decided *Blair v. Scott Specialty Gases,* 283 F.3d 595 (3d Cir.2002). *Blair,* like *Green Tree I,* involved a challenge to the enforceability of an arbitration agreement based on the inability of the plaintiff to pay for arbitration fees. Because the district court's decision to compel arbitration was made without the advantage of *Green Tree I,* and because it found that the district court did not fully explore the cost issue, the Third Circuit remanded the case for limited discovery on plaintiff's ability to pay for arbitration. *Id.* at 608–610. In dictum, the Third Circuit addressed the apparent tension between *Great Western,* which had allocated to the arbitrator the task of determining whether the agreement to arbitrate involved a waiver of substantive rights provided by statute, and *Green Tree I,* in which the Supreme Court itself had resolved the issue of whether the cost of arbitration was so "prohibitive" as to deny the claimant her statutory rights. According to the Third Circuit,

Great Western held that the question of whether the arbitration agreement validly waived certain rights afforded by New Jersey law could be presented in the arbitral forum, but also evaluated that claim on the merits and found that the claimant had not demonstrated any New Jersey policy against arbitration. Because Great Western did not foreclose the ability of courts to examine public policy arguments, it is not in conflict with the holding of Green Tree, and has not been overruled.

*Id.* at 611.

The Supreme Court revisited the interplay between an agreement to arbitrate and the effect an agreement to arbitrate may have on substantive rights provided by statute in *PacifiCare Health Systems, Inc. V. Book,* 538 U.S. 401, 402, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003). Because the contracts between the parties provided that punitive relief could not be awarded, plaintiffs argued that the arbitration provisions prevented plaintiffs from obtaining "meaningful relief" under the RICO statute because the statute permitted, among other things, treble damages. *Id.* at 403, 123 S.Ct. 1531. The district court, denied the motion to compel arbitration because "plaintiff may not be able to obtain meaningful relief for allegations of statutory violations in an arbitration forum." *Id.* The Eleventh Circuit affirmed. *Id.* The Supreme Court reversed and remanded the case to the arbitrator. *Id.* at 407, 123 S.Ct. 1531.

The Supreme Court found that, because of uncertainty surrounding the parties' intent with respect to the contractual term "punitive," the application of the disputed arbitration language to plaintiffs' RICO Claims was in doubt. *Id.* at 406, 123 S.Ct. 1531. "[O]n the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that

casts their enforceability in doubt," the Court declined to "decide the antecedent question of how the ambiguity is to be resolved." *Id.* Because the preliminary question of whether the remedial limitations at issue prohibited an award of statutory remedies was not a "gateway" question or a question of arbitrability, the Court found that it was not a question for the Court to answer in the first instance. *Id.* at 407 n. 2, 123 S.Ct. 1531.

More recently, in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 2408–2407, 156 L.Ed.2d 414 (2003)("*Green Tree II*"), the Supreme Court was asked to determine whether or not an arbitration agreement forbade class arbitration. In analyzing the issue, the Court reaffirmed its instruction in *Howsam* that the role of the courts when faced with a motion to compel arbitration was limited to certain "gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration agreement clause applies to a certain type of controversy." *Id.* at 2407. In the Court's judgment, the dispute about whether the agreement permitted class arbitration did not fall within one of the exceptions. *Id.* Because the literal terms of the contract did not speak to the issue and because the answer required contract interpretation and concerned arbitration procedures, the Court held that the arbitrator should decide the issue. *Id.* at 2407–2408.

■■■ What *Great Western, Green Tree I, Blair, PacifiCare*, and *Green Tree II* read together teach is that all challenges to the enforceability of an arbitration agreement must overcome the well-settled judicial policy in favor of enforcement of these agreements. However, challenges to enforceability claiming a provision of the arbitration agreement will deny a party a statutory right which re-

quire interpretation of the arbitration agreement and of arbitration procedures raise questions which an arbitrator is "well situated to answer." *Green Tree II*, 123 S.Ct. at 2407. On the other hand, when the claim is that a provision of the arbitration agreement itself will deny a party access to an arbitrator, such as where arbitration costs would be "prohibitively expensive" to that party, *see, e.g., Green Tree I*, 531 U.S. at 92, 121 S.Ct. 513, such a claim of unenforceability is reserved for the court because in that event, the party burdened with the "prohibitively expensive" costs may not otherwise be able to "effectively vindicate [his or her] statutory cause of action in the arbitral forum," *id.* at 90, 121 S.Ct. 513 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

The Court will apply these teachings to plaintiffs' arguments that submitting the case to arbitration will effectively deprive them the benefit of available statutory remedies and that the potential costs of going to arbitration, including the prospect of fee-shifting of attorney's fees, renders the arbitral forum "prohibitively expensive." *Green Tree I*, 531 U.S. at 92, 121 S.Ct. 513.

### I. The Liability and Indemnification Provisions of the PPA.

■■ Plaintiffs' argument against arbitration is premised on the potential effect of the sections of the PPA which deal with liability and indemnification and which plaintiffs claim limit their statutory remedies. In other words, according to plaintiffs, the arbitrator would be prevented from according the full panoply of remedies available under federal law if plaintiffs are ultimately successful in this case. To find the Arbitration Agreement unenforceable, the Court would have to find that an

arbitrator necessarily would interpret the parts of the PPA dealing with the scope of liability to preclude the award of treble damages, actual damages and attorneys' fees. Because the contract provisions referred to by plaintiffs are completely silent on the issue of remedies with respect to statutory claims and because the Arbitration Agreement itself requires the arbitrator to follow the "rule of law," it would be wholly speculative at this point for the court to proceed under the assumption that an arbitrator would interpret Secs. 7.1 and 7.2 of the PPA in such a way as to preclude the remedies provided for under the antitrust laws.[4] *See Green Tree II,* 123 S.Ct. at 2404, 2406–2407 (finding that because the literal terms of contract were "silent," issue concerned contract interpretation and remained for the arbitrator to decide); *PacifiCare,* 538 U.S. at 406–407, 123 S.Ct. 1531 (finding that it was not for the court to resolve ambiguous provisions in the first instance based on " 'mere speculation' than an arbitrator might interpret these arbitration agreements in a manner that casts their enforceability into doubt"). Thus, the Court concludes that it would be premature at best to hold that the Arbitration Agreement is unenforceable on the grounds that arbitration precludes the availability of statutory remedies. As rec-

ognized by the Third Circuit, "[a]ny argument that the provisions of the Arbitration Agreement involve a waiver of substantive rights afforded by the state statute may be presented in the arbitral forum." *Great Western,* 110 F.3d at 231; *see also Carbajal,* 372 F.3d 903, 906–907 (relying on *Howsam, Green Tree II,* and *PacifiCare* and finding that "[w]hether any particular federal statute overrides the parties' autonomy and makes a given entitlement nonwaivable is a question for the arbitrator"); *Bailey v. Ameriquest Mortg. Co.,* 346 F.3d 821, 824 (8th Cir.2003) (relying on *Howsam, Green Tree II,* and *PacifiCare* and finding that "[w]hen an agreement to arbitrate encompasses statutory claims, the arbitrator has the authority to enforce substantive statutory rights, even if those rights are in conflict with contractual limitations in the agreement that would otherwise apply"). Thus, the task of resolving the issue of the availability of statutory remedies under the Arbitration Agreement will be left to the arbitrator.

ii. *"Prohibitively Expensive" Arbitration Costs.*

 Plaintiffs also argue that a fee-shifting provision of the Arbitration Agreement, which provides that costs and attor-

---

**4.** In fact, the liability provision of the PPA that plaintiffs rely on appears to limit defendant's liability to specific circumstances not present in the instant antitrust dispute (i.e., disputes "arising out of the sale, compounding, dispensing, manufacturing, or use of any drug or device dispensed."). As for the indemnification clause, only a tortured reading of the clause would require the pharmacy plaintiffs to indemnify Advance PCS for losses arising out of a lawsuit filed by the pharmacy plaintiff's themselves, i.e., the party having the alleged duty to indemnify. Moreover, to the extent that any of the provisions of the written agreement are unenforceable as violative of public policy (or on any other grounds), the agreement contains a severability clause. It provides as follows: "Whenever

possible each provision of this Agreement will be interpreted so as to be effective and valid under applicable Law, but if any provision of this Agreement should be rendered unenforceable or invalid under applicable Law, that provision will be ineffective to the extent of such unenforceability or invalidity without invalidating the remaining provisions of this Agreement. Any such determination shall not invalidate or render unenforceable the remaining provisions of the Agreement in any other jurisdiction or under any other circumstances." The Court has no reason to conclude, at this point, that an arbitrator would not sever portions of the agreement deemed unenforceable. Thus, it appears that the enforcement of the Arbitration Agreement would not violate public policy.

neys fees will be paid by the losing party, is unenforceable because it places plaintiffs at a severe economic disadvantage and thereby prohibits plaintiffs from vindicating their statutory rights through arbitration. The specific provision that plaintiffs challenge states that "the expenses of the arbitration, including attorneys' fees, will be paid for by the party against whom the award of the arbitrator is rendered." Pharmacy Provider Agreement, at p. 7. This issue, unlike the issue of whether the Arbitration Agreement precludes plaintiffs from obtaining certain statutory remedies, an issue of contract interpretation left up to the arbitrator, involves a party's inability to meaningfully access the arbitral process and it is thus for the Court to decide. See Green Tree I, 531 U.S. at 90–92, 121 S.Ct. 513.

▆▆▆▆ Under Green Tree I, the "party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." 531 U.S. at 92, 121 S.Ct. 513. The Court concludes that plaintiffs have not satisfied their burden in this case.

Plaintiffs have proffered affidavits from various executives, employed by several of the pharmacy plaintiffs, indicating that their respective companies would not have

the ability to pursue the antitrust claims if the fee-sharing agreement and fee-shifting agreement is enforced.[5] The affidavits provided by plaintiffs contain nothing more than statements that the pharmacy "could likely not afford to pursue its antitrust claim" or that the pharmacy "would likely be deterred from pursuing its antitrust claim." Notably missing is any showing of financial wherewithal, such as income statements or statements of net worth of the plaintiffs and their principals, or how the potential for fee-shifting of attorney's fees is tantamount to the "existence of large arbitration costs [which] could preclude a litigant such as [plaintiffs'] from effectively vindicating [their] federal statutory rights in the arbitral forum." Green Tree I, 531 U.S. at 90, 121 S.Ct. 513. Plaintiffs' conclusory and self-serving affidavits are insufficient to satisfy plaintiffs' burden that proceeding to arbitration would be "prohibitively expensive." Blair, 283 F.3d at 608 (finding similarly self-serving and conclusory affidavits insufficient).

### iii. Unconscionability.

▆▆▆▆ Next is the issue of whether the provision of the Arbitration Agreement which requires fee-shifting of arbitration costs and attorney's fees is unconscionable.[6] See Parilla v. IAP Worldwide

---

**5.** Meanwhile, defendants have offered evidence, in the form of industry reports, that the Pharmacy Freedom Fund, one of the plaintiffs in this action, have sought to accumulate a $9 million "war chest" to litigate the antitrust claims. The industry reports indicate that so far the Fund has raised more than $1 million.

**6.** As with the other arguments raised by plaintiffs, defendant argues that this allegation should also be considered in the arbitral forum. The Court is not persuaded that the issue of unconscionability should be decided by the arbitrator. Unlike arguments against

enforcement of contractual agreements supported on waiver or public policy grounds, the defense of unconscionability strikes at the heart of the question of whether or not the parties had a "valid arbitration agreement at all." Green Tree II, 539 U.S. at 452, 123 S.Ct. 2402. According to the Third Circuit, unconscionability concerns,

> Gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved of deception or compulsion, or may show that the weaker party had no meaningful choice, no

*Servs., VI, Inc.,* 368 F.3d 269, 276–277 (3d Cir.2004)(applying Virgin Islands law). *Parilla* involved the issue of whether certain fee-shifting and cost-sharing provision found in an arbitration agreement were unenforceable under Virgin Islands law. *Id.* In considering the concept of "unconscionability" as applied to Virgin Islands contract law, the court noted that unconscionability had two distinct elements: procedural unconscionability and substantive unconscionability and that both must be present to find that a contractual provision is unenforceable. *Id.* at 276. "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. This element is usually satisfied if the agreement constitutes a contract of adhesion." *Id.* (quoting *Restatement (Second) of Contracts* § 208 (1981)). Substantive unconscionability "refers to terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.*

■ Like the Virgin Islands law, Pennsylvania law also recognizes that unconscionability has two elements: procedural and substantive. *See Metalized Ceramics for Elecs. v. National Ammonia Co.,* 444 Pa.Super. 238, 248, 663 A.2d 762 (1995). Therefore, *Parilla*'s analysis under Virgin Islands law is equally applicable to Pennsylvania law.

The Court finds that plaintiffs have not established the first element of uncon-

scionability, i.e., procedural unconscionability. Although counsel for plaintiffs indicated to the Court at oral argument on the motion that, in his judgment, the written agreements were "contracts of adhesion," no competent evidence in support of this assertion, i.e., relative bargaining position or coercion surrounding the negotiation of the PPA, was proffered by plaintiffs.[7] Thus, the Court finds that plaintiffs have failed to meet their burden of establishing the procedural unconscionability of the challenged provisions.

Since procedural unconscionability has not been demonstrated by plaintiffs, the Court concludes that the Arbitration Agreement is not unconscionable.

### 4. *Remedies.*

■ Finding that there is a valid agreement to arbitrate between the parties and that the instant dispute falls within the scope of the Arbitration Agreement, that there has been no waiver, that plaintiffs have not met their burden of establishing that the arbitration costs, including the provision of fee-shifting of attorney's fees, renders the arbitral forum "prohibitively expensive," and that the Arbitration Agreement is not unconscionable, the Court will grant plaintiffs' motion to compel arbitration and stay the proceedings pending the outcome of arbitration. *See Lloyd v. Hovensa,* 369 F.3d 263, 270 (3d Cir.2004)(holding that a stay is mandatory if one of the parties requests a stay).

---

real alternative, or did not in fact assent or appear to assent to the unfair terms.

*Alexander,* 341 F.3d at 265 (citing *Restatement (Second) Contracts § 208 cmt.d* ). Indeed, the Supreme Court's decision in *Green Tree I,* discussed supra, and recent decisions from the Third Circuit, such as *Parilla,* 368 F.3d at 283–284 (considering arguments that provisions of an arbitration agreement rendered arbitration prohibitively expensive); *Alexan-*

*der,* 341 F.3d at 265–270 (same); *Spinetti,* 324 F.3d 212, 217–219 (3d Cir.2003) (same); *Blair,* 283 F.3d at 604–608 (same), persuade the Court that the plaintiffs' unconscionability argument should be addressed here as a "gateway" issue touching upon the validity of the arbitration agreement itself.

7. Averments made in the complaint are insufficient to sustain plaintiffs' burden.

**5.** *The Claims of the Pharmacy Association Plaintiffs.*

If the court orders arbitration and decides to dismiss or stay the claims against the pharmacy plaintiffs, defendant argues that the Court should dismiss or stay the claims against the association plaintiffs as well. Plaintiffs have raised no objection to staying the action in the event the motion to compel arbitration is granted. Therefore, the proceedings shall be stayed as to the association plaintiffs.

## III. CONCLUSION

Defendant's motion to compel arbitration is granted. The proceedings are stayed pending the outcome of arbitration.

An appropriate order follows.

## ORDER

**AND NOW,** this 20th day of August 2004, for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that defendant's motion to compel arbitration (doc. no. 32) is **GRANTED**.

It is **FURTHER ORDERED** that this case shall be **STAYED** until further order of the Court.

**AND IT IS SO ORDERED.**